DAVID SANCHEZ,
DONALD JACKSON,
JUDY FATH-JACKSON,
TRUDY WILDE, BARBARA
SANCHEZ, GEORGE BROWN,
and ROSEMARY BROWN,

   *Plaintiffs*,

*v.*

KOCHVILLE, TOWNSHIP OF,
ALAN BADER, MARTIN YANCER,
EDWARD TAYLOR, JERRY DAVIS,
RANDY NORTON, CRYSTAL KAUER,
and PATRICIA BOURDOW,

   *Defendants*.

_____/

CASE NO. 09-CV-12076

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE CHARLES BINDER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT
(Doc. 25)

## I.   RECOMMENDATION

  For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **GRANTED** and that the case be **DISMISSED**.

## II.   REPORT

### A.   Introduction & Procedural History

  Plaintiffs are residents of Kochville Township in Saginaw County, Michigan, who allege that their First and Fourteenth Amendment rights were violated by Defendants when Defendants disqualified Plaintiffs from serving on the Kochville Township Board of Trustees based on their

previous support of a recall effort in that township. (Doc. 1 ¶¶ 25-44.) Defendants filed the instant motion to dismiss or for summary judgment on June 30, 2010. (Doc. 25.) On July 7, 2010, United States District Judge Thomas L. Ludington referred the motion to the undersigned magistrate judge. (Doc. 26.) Plaintiff responded (Doc. 28) and Defendants replied. (Doc. 29.) Oral argument was held on August 18, 2010. After considering the arguments of the parties and upon review of the documents, I conclude that, pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation.

## B. The Complaint

Plaintiffs' complaint specifically alleges that in the fall of 2005, Plaintiffs formed a concerned citizens group called "Kochville First" in order to call attention to and prevent a proposed rezoning of Kochville Township (hereafter "the Township") that would allow for commercial development. (Doc. 1 ¶¶ 20-22.) The rezoning was prevented, and in April 2006, a petition was circulated to recall the Township Trustees based on the zoning issue, alleged violations of the Open Meetings Act[1] and for appointing relatives to township positions. (Doc. 1 ¶¶ 23-24.) The recall petition was successful and, after four trustees were removed, only Patricia Bourdow remained. (Doc. 1 ¶ 25.)

Since one trustee did not a quorum make, the Saginaw County Election Commission[2] ("Election Commission") began an initial search for two persons to temporarily serve on the Township Selection Committee that would in turn select two persons to serve on the Township Board of Trustees. (Doc. 1 ¶ 26.) Applications were due no later than August 21, 2006. (Doc. 1

---

[1]Although the Complaint refers to the "closed meeting act," I believe Plaintiffs intended to cite the Open Meetings Act, Mich. Comp. Laws § 15.621 *et seq.*

[2]The Commission was comprised of Saginaw County Family Court Judge Harrison, Saginaw County Treasurer Hare, and Saginaw County Clerk Kaltenbach. (Doc. 1 ¶ 26.)

¶ 27.) At the August 14, 2006, meeting of the Election Commission, it was noted that the Commission was "seeking applicants who were not involved in the recall petition." (Doc. 1 ¶ 27.) On August 16, 2006, the Election Commission "established the process for filling vacancies generated from the recall effort," i.e., the positions of Township Clerk and Treasurer. (Doc. 1 ¶ 28.) The Election Commission indicated that the "applicants must be registered voters" and that the Commission, along with the sole remaining Trustee, would select the two members of the Township's Board of Trustees who would serve temporarily until the next general election in November 2006. (Doc. 1 ¶¶ 28-29.) The application asked only whether the candidate was a registered voter in the Township, whether the candidate had ever been convicted of a felony, whether the candidate understood the position was temporary and why the candidate was interested in the position. (Doc. 25, Ex. 1.)

At the August 21, 2006, Election Committee meeting, Defendant Bader listed the Plaintiffs along with others who had been involved in the recall effort and "announced that these people should not be considered for any temporary Board position." (Doc. 1 ¶ 30.) At other Election Committee meetings occurring on August 16, and August 23, 2006, "residents questioned why and/or how the Commission or the Township could disqualify applicants because they were participants in either the recall or referendum efforts." (Doc. 1 ¶ 31.) Despite these discussions, the only qualifications for the openings listed on the Election Commission's posting were that the candidates must be residents of the Township and registered to vote in the Township. (Doc. 1 ¶ 32.)

The Election Committee chose Defendants Taylor and Yancer to join Defendant Bourdow on the Selection Committee. (Doc. 1 ¶ 33.) The Election Committee then created an application form regarding the two open positions on the Township Board of Trustees and question 15 of that

form asked "about the applicant's involvement in the recall and/or referendum efforts." (Doc. 1 ¶ 34; Ex. A.) When Plaintiffs "made public comments that they believed it was or would be unconstitutional to judge applicants according to their answers to question #15 [,] [t]he Plaintiffs were assured that item/question #15 would be 'used for reference only.'" (Doc. 1 ¶ 35.) "Some of the applicants who answered 'yes' to question #15 were selected for an interview" but were "grilled" about involvement with the recall or referendum efforts and were "then disqualified." (Doc. 1 ¶ 36.)

On September 5, 2006, Plaintiff Fath-Jackson was interviewed by the Selection Committee for the Treasurer position but was turned down and was told by Defendant Yancer that "because she had signed the recall petition, they had to chose the other applicant, Defendant Norton." (Doc. 1 ¶ 38.) On September 26, 2006, Plaintiffs Sanchez and Fath-Jackson were interviewed for the Supervisor and Trustee positions that had been posted. They were asked about question 15, and although they were qualified for the positions, they were denied employment. (Doc. 1 ¶ 41.) On October 2, 2006, Plaintiff Jackson applied to be a member of the Township's Planning Commission but was not appointed to that position until December 20, 2008, "after election of a new Township Trustee Board." (Doc. 1 ¶ 42.) At the November 21, 2006, Township Board meeting, when referring to the process of choosing an additional Trustee, Township Treasurer Defendant Kauer stated that "'we should stay away from the people that brought around petitions which were about fifteen (15) people." (Doc. 1 ¶ 43, Doc. 1 Ex. C at 7.)

Apparently Plaintiffs George Brown, Rosemary Brown, and Trudy Wilde applied for the remaining Trustee position "at one time or another," but were not chosen. (Doc. 1 ¶ 44.)

Plaintiffs allege that they were "denied employment and/or appointment" and were "verbally abused and publicly humiliated by the Defendant's Trustees during monthly meetings

since the recall and/or referendum efforts." (Doc. 1 ¶ 45.) Plaintiffs aver that the above actions violated their Fourteenth Amendment rights to due process because they have a liberty interest "not to be stigmatized by false and untrue statements [or] guilt by association . . . that would thereby seriously hinder the Plaintiff's ability to obtain and/or keep employment with the Township," and because they have a property interest in obtaining employment with the Township. (Doc. 1, Count I, ¶¶ 47-48.) Plaintiffs further aver that the above actions constituted violation of their First Amendment rights because Defendants retaliated against them for exercising their rights of free speech. (Doc. 1, Count II.) Plaintiffs seek compensatory and punitive damages. (Doc. 1 at 13.)

### C.     Motion Standards

### 1.     Dismissal

In facing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555

(citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted).

The Supreme Court recently explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1949 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

The elements of a civil rights claim under 42 U.S.C. § 1983 are: (1) the violation of a right secured by the federal Constitution or federal law that was (2) committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

**2.      Summary Judgment and Qualified Immunity**

Defendants contend that they are entitled to qualified immunity. The Supreme Court has explained that, pursuant to the defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

When a defendant moves for summary judgment on the basis of qualified immunity, the analysis involves three inquiries: (1) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (2)

"whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (3) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).

In deciding qualified immunity questions, courts were for some years required to address these inquiries in sequential order. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005); and *Klein v. Long*, 275 F.3d 544 (6th Cir. 2001) (both citing *Saucier*, 533 U.S. at 201). However, the sequential approach is no longer mandated; trial judges are now permitted to use their sound discretion in deciding which of the prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, ___U.S.___, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

The Supreme Court has also clarified the interplay between qualified immunity and the summary judgment standards found in Rule 56(c) of the Federal Rules of Civil Procedure:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

Once the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). The court must only consider the facts known to the defendant at the time the conduct was undertaken. *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005).

### D. Parties' Arguments

The parties' positions were further clarified at oral argument. Defendants contend that Count I of Plaintiffs' Complaint should be dismissed for failure to state a claim upon which relief can be granted because Plaintiffs have no constitutionally protected liberty or property interest in employment with the Township, nor is there any constitutional right not to be verbally abused and humiliated and, even if there were, the allegations do not shock the conscience as is required for a substantive due process claim. (Doc. 25 at 25-28.) In addition, Defendants argue that they are entitled to dismissal or summary judgment with respect to Count II because Plaintiffs have failed to allege any unconstitutional municipal custom or policy on the part of the Township, because Plaintiffs have failed to establish a genuine issue of material fact supporting their claim that the remaining Defendants' conduct caused injury likely to chill a person of ordinary firmness from continuing to engage in the protected activities, and because certain types of public employment – e.g., policy-making positions – allow political belief or affiliation to be an appropriate job requirement. (Doc. 25 at 31-34.) Finally, Defendants argue that they are entitled to summary judgment based on qualified immunity. (Doc. 25 at 35-37.)

Plaintiffs respond[3] that they have adequately pled facts sufficient to satisfy the conscience-shocking standard of a substantive due process claim, that they have a constitutionally protected interest in participating in the recall or referendum, and that denying them employment creates an unconstitutional condition of employment, citing *Lane v. City of Follette*, 490 F.3d 410, 419 (6th Cir. 2007).  (Doc. 28 at 11-14.)  Plaintiffs further argue that even if there is no constitutionally protected right, "it is impermissible to deny access to a government benefit or employment because of the exercise of a constitutionally protected right[,]" citing *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972).  Plaintiffs further argue that even if they do not have a protected property interest, they have a protected liberty interest to be free from interference with their positions, citing *Newsom v. Norris*, 888 F.2d 371, 375 (6th Cir. 1989).  (Doc. 28 at 15-16.) Plaintiffs contend that the positions they sought were not policy-making and that there was no legitimate government interest in excluding them.  (Doc. 28 at 16-17.)  Plaintiffs also argue that although there was no Township policy which would allow Plaintiffs to have been excluded based on their participation in the recall, the acts of Defendants "fairly represent official policy."  (Doc. 28 at 18.)  Plaintiffs also contend that they have satisfied the elements of a First Amendment retaliation claim and that Defendants are not entitled to qualified immunity.  (Doc. 28 at 20-23.)

### E.    Analysis & Conclusions

### 1.    Defendant Kochville Township

It is well-established that to state a federal civil rights claim, a plaintiff must allege the personal involvement of each defendant.  *See, e.g., Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691-92, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (liability under § 1983 cannot be based upon a theory of *respondeat superior*); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)

---

[3]Plaintiffs labeled this document a "Reply," but since it is actually a Response, I shall call it such. (Doc. 28.)

(supervisory defendant must have been personally involved, encouraged or condoned the alleged misconduct); *Kesterson v. Moritsugu*, No. 96-5898, 1998 WL 321008, at **4 (6th Cir. 1998) (a plaintiff must "allege that a specific defendant performed a specific act that suffices to state a claim"). A plaintiff may only hold a local government entity liable under § 1983 for the entity's own wrongdoing. *Id.* A local governmental entity violates § 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights. *Id.* In other words, the policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (citing *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981)).

In the instant case, the Complaint avers that the only qualifications for service were residency and registration to vote in the Township. (Doc. 1 ¶¶ 28, 32; Doc. 25, Ex. 1, App. for Township Board temporary positions.) However, the Complaint also avers that the Selection Committee, comprised of Defendants Taylor, Bourdow, and Yancer, produced the application form for the temporary trustee positions and included question 15, which asked whether the applicant had any involvement with the recent recall campaign. (Doc. 1 at Ex. A.) The application form, however, also asked many other questions that were not directly related to the minimum qualifications, such as length of state residency, formal education, work experience, and whether the applicant had ever been previously employed by or elected to a position in the Township. (*Id.*) Other than question 15 on the application form, the sum total of the allegations relating to predisposition of the trustees to reject those who participated in the recall are Defendant Bader's comments on August 21, 2006, and Defendant Kauer's statement on November 21, 2006. (Doc. 1 ¶¶ 30, 34, 43.) Taking these allegations as true, I suggest that they fail to show the existence of

any Township policy as the moving force behind the alleged unconstitutional actions by the individual defendants who created the application form, interviewed Plaintiffs, and chose not to hire Plaintiffs. I therefore suggest that Plaintiffs have failed to state a claim against Defendant Kochville Township and that it should be dismissed.

### 2. Defendants Davis and Norton

In a civil rights case, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. *See also Rizzo v. Goode*, 423 U.S. 362, 371-72, 377, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976) (a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant). In the instant case, there are no allegations regarding any conduct taken by Defendants Davis or Norton other than the introductory paragraphs which state that Defendant Norton was appointed temporary Treasurer of the township and that Defendant Davis was appointed temporary Trustee. (Doc. 1 ¶¶ 14, 15.) I therefore suggest that Defendants Norton and Davis be dismissed for failure to allege any individual action on their part that contributed to the Plaintiffs' alleged injuries.

### 3. Remaining Defendants

### a. Fourteenth Amendment Due Process

Plaintiffs do not specify whether they allege violations of their procedural or substantive due process rights. "Procedural due process generally requires that the state provide a person with notice and opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005). Substantive due process is the doctrine that "governmental deprivations of life, liberty or property are subject to limitations

regardless of the adequacy of the procedures employed." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003). Both procedural and substantive due process claims require a showing that a constitutionally protected property or liberty interest has been infringed. *Club Italia Soccer & Sports Organization, Inc. v. Charter Twp of Shelby, Michigan,* 470 F.3d 286, 297 (6th Cir. 2006) (procedural due process rights are only violated when a *protected* liberty or property interest is denied without adequate hearing") (emphasis in original); *Braun v. Ann Arbor Charter Twp*, 519 F.3d 564, 573 (6th Cir. 2008) ("'To state a substantive due process claim . . . a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action.'") (citation omitted); *McGuire v. City of Moraine, Ohio*, 178 F. Supp. 2d 882, 892 (S.D. Ohio 2001) ("it is well-settled that they cannot establish a violation of substantive or procedural due process, as a matter of law, *unless* they possessed a property interest . . . .").

"[S]ubstantive due process protects only against state action that is not otherwise proscribed by the plain text of other constitutional amendments . . . . Where a plaintiff has recourse to an 'explicit textual source of constitutional protection,' a more general claim of substantive due process is not available." *Paeth v. Worth Township*, 705 F. Supp. 2d 753, 770 (E.D. Mich 2010) (citations omitted). *See also Ciminillo v. Streicher*, 434 F.3d 461, 465 (6th Cir. 2006). With regard to the claims alleged by Plaintiffs in this case, the First Amendment provides an explicit textual source of constitutional protection; therefore, I suggest that to the extent that Plaintiffs have alleged a substantive due process claim, it is not available and that Defendants' are therefore entitled to dismissal of this claim. Furthermore, even if it were available, I am unable to discern allegations in the Complaint which constitute conduct that is conscience-shocking, as required to

state a cognizable substantive due process claim. *See Mitchell v. McNeil*, 487 F.3d 374, 377 (2007). I therefore suggest that Defendants' motion to dismiss be granted as to this claim.

With regard to the procedural due process claim, Sixth Circuit law has been less than clear on whether Plaintiffs need to show the inadequacy of state remedies before proceeding in federal court. The court in *Mitchell v. Fankhauser*, 375 F.3d 477 (6th Cir. 2004), analyzed two divergent lines of Sixth Circuit cases applying the *Parratt v. Taylor* requirement that a plaintiff plead and prove the inadequacy of state processes, including damages, to redress the deprivation. *See Parratt v. Taylor*, 451 U.S. 527, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981). The Sixth Circuit specifically noted that "[w]e are therefore faced with deciding between multiple precedents on both sides – those that apply *Parratt* only to random, unauthorized deprivations of property and those that apply *Parratt* more broadly." *Fankhauser*, 375 F.3d at 483-84. The court chose to follow the line of cases that apply *Parratt* only to random, unauthorized deprivations of property. *Fankhauser,* 375 F.3d at 483-84.

In the instant case, as discussed in the section regarding Defendant Kochville Township, the Complaint avers that the Township policy properly provided that the only qualifications for service were residency and registration to vote in the Township. (Doc. 1 ¶¶ 28, 32; Doc. 25, Ex. 1, App. for Township Board temporary positions.) The remaining allegations of the Complaint all relate to the acts of the individual members of the Selection Committee – Defendants Taylor, Bourdow and Yancer – and statements made by Defendants Bader and Kauer (Doc. 1, Ex. A, ¶¶ 30, 34, 43.) I suggest that these actions are best characterized as random, unauthorized acts that exceed the policy of the Township and therefore, that Plaintiffs were required to plead and prove that state remedies were inadequate to redress the deprivations under *Parratt* and *Fankhauser.*

Plaintiffs failed to do so, and I therefore further suggest that summary judgment could be granted on this claim on this basis alone.

Even if Plaintiffs had pled and proven the inadequacy of state remedies, I suggest their procedural due process claims must also fail for the reason that they have not alleged a protected property or liberty interest. To plead a procedural due process claim, a plaintiff must allege: (1) a life, liberty, or property interest exists and has been subject to interference by the state; and (2) the procedures attendant upon the deprivation of an existing interest were constitutionally insufficient. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1990). Procedural due process rights arise only after a showing that plaintiff holds a constitutionally protected property or liberty interest. *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003); *International Union, United Auto., Aerospace & Agric. Workers of Am., Local 737 v. Auto Glass Employees Fed. Credit Union*, 72 F.3d 1243, 1251 (6th Cir. 1996) (absent protected property interest in continued employment, no process is due).

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). "An abstract need or unilateral expectation does not suffice to create a property interest; rather, a person must 'have a legitimate claim of entitlement.'" *Richardson v. Township of Brady*, 218 F.3d 508, 517 (6th Cir. 2000) (quoting *Roth*, 408 U.S. at 569)). Since Plaintiffs in this case were not yet employed, but were seeking employment with the Township, their hope for employment does not suffice to create a protected property interest. Therefore, I suggest that Plaintiffs' procedural due process claim is not based on any property interest.

The Sixth Circuit explained the following regarding liberty interests:

"[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989). A deprivation of any of those interests "must be accompanied by notice and an opportunity to be heard to refute any charges against that person." *Id.* In *Ludwig*, this Circuit identified five elements that must be satisfied to establish that a plaintiff was deprived of a liberty interest entitling the plaintiff to a name-clearing hearing:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. . . . Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. . . . Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

123 F.3d at 410 (internal citations omitted). Once a plaintiff has established the existence of all five elements, he is entitled to a name-clearing hearing if he requests one. *Id.*

*Brown v. City of Niota, Tenn.,* 214 F.3d 718, 722-23 (6th Cir. 2000) (citations omitted) (granting summary judgment in favor of defendants where plaintiffs had not requested name clearing hearing and thus, had not been denied the same). Where "Plaintiffs have never requested a name clearing hearing nor have they alleged they were denied such a request[,] Plaintiffs' failure to request a name clearing hearing is fatal to their claim." *Shealy v. Caldwell*, 16 Fed. App'x 388, 396 (6th Cir. 2001) (citing *Ludwig,* 123 F.3d at 411).

In the instant case, since Plaintiffs never asked for, nor were they denied, a name clearing hearing, summary judgment could be granted on this basis alone. Moreover, even if Plaintiffs had sought and been denied a name clearing hearing, I suggest that Defendants' actions did not deprive Plaintiffs of a liberty interest. Where the state neither defames the plaintiff nor interferes with the plaintiff's ability to pursue other business or employment opportunities, the plaintiff fails to state

a claim for deprivation of a liberty interest. *Systematic Recycling, LLC v. City of Detroit*, 684 F. Supp. 2d 663, 675 (E.D. Mich. 2010). Although Plaintiffs allege that they were abused and humiliated, they do not claim that the statements regarding their participation in the previous recall effort were false; indeed, their admitted participation in the recall is the basis for their claim of retaliation. (Doc. 1 ¶¶ 51, 53.) Therefore, I suggest that Plaintiffs cannot claim they were defamed.

Plaintiffs instead appear to rely on a claim that Defendants interfered with their ability to pursue other business or employment opportunities. (Doc. 1 ¶ 66; Doc. 28 at 19 ("Defendants have foreclosed on Plaintiffs' ability to find other gainful employment.") However, Plaintiffs have not provided any evidence that they sought and were denied employment due to the statements made by Defendants regarding their participation in the recall. Plaintiffs have not satisfied their evidentiary burden to come forward with evidence revealing a genuine issue of material fact in response to the motion for summary judgment. I therefore suggest that Defendants should be granted summary judgment on the procedural due process claims.

### b. First Amendment Retaliation

The Complaint avers that Defendants violated Plaintiffs' First Amendment rights by retaliating against them because they exercised their right to free speech, i.e., they participated in the recall. (Doc. 1, Count II, ¶ 52.) A First Amendment retaliation claim consists of the following elements: (1) the plaintiff was engaged in constitutionally-protected conduct; (2) the defendant's adverse action would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between elements one and two, i.e., the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc); *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004).

Defendants appear to concede that Plaintiffs were engaged in constitutionally protected conduct, but argue that Defendants' conduct would not deter a person of ordinary firmness from continuing to engage in the protected activities because certain types of public employment, e.g., policy-making positions, allow political belief or affiliation to be an appropriate job requirement. (Doc. 25 at 31-34.) I suggest that I need not decide whether being disqualified from participation on the Kochville Township Board, if proven, could deter a person of ordinary firmness from engaging in the protected activity, because Defendants correctly assert that the Township positions sought by Plaintiffs fall into a category of jobs where political belief or affiliation is an appropriate job consideration.

The Sixth Circuit has stated that the "Court's 'modern "unconstitutional conditions" doctrine holds that the government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech' even if he has no entitlement to that benefit . . . .'" *Carver v. Dennis*, 104 F.3d 847, 849 (6th Cir. 1997) (citations omitted) (quoting *Perry*, 408 U.S. at 597)). "Although the Supreme Court has frequently invalidated state action which has infringed a candidate's interest in seeking political office, it 'has not heretofore attached such fundamental status to candidacy as to invoke a rigorous standard of review.'" *Newcomb v. Brennan*, 558 F.2d 825, 828 (7th Cir. 1977) (finding deputy city attorney position to have duties of a "broad scope" that equate with policy-making function, thereby finding discharge of deputy city attorney who declared he would run against the city attorney did not violate the constitution); *See also Carver,* 104 F.3d at 849 (holding that "no reading of the First Amendment required Dennis to retain Carver after Carver announced her intention to run against Dennis . . . [because] the First Amendment does not require that an official in Dennis's situation nourish the viper in the nest.").

"The *Elrod-Branti-Rutan* trilogy teaches that 'the First Amendment forbids government officials to discharge . . . [or transfer or fail to promote, recall, or hire] public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved.'" *Cope v. Heltsley*, 128 F.3d 452, 457 (6th Cir. 1997) (citations omitted) (holding that clerk enjoyed qualified immunity against suit by plaintiff alleging clerk violated free speech rights by her retaliatory refusal to make them members of her staff). The rationale behind this doctrine is that "denial of a government benefit on account of a person's political beliefs is in effect a penalty for holding those beliefs; permitting the state to impose such a penalty would constitute an 'unconstitutional condition' that would allow the state to indirectly interfere with an employee's constitutional rights that it could not accomplish directly." *Lane v. City of LaFollette, Tenn.*, 490 F.3d 410, 419 (6th Cir. 2007) (citations omitted).

However, party affiliation has been held to be an acceptable condition for certain governmental positions that are policymaking, confidential, or where party affiliation is an appropriate requirement for effective performance of the position. *Id.*

> In *McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996), the Sixth Circuit outlined four categories of government positions that will always qualify for patronage exceptions: (1) those that are specifically named in a relevant statute or that are charged with the discretionary authority to carry out the law or other policy of political concern; (2) a position to which discretionary decisionmaking of the first category has been delegated; (3) confidential advisors who spend a significant amount of their time advising category-one employees on how to exercise their statutory policymaking authority, or other employees who control the lines of communications to category-one employees; and (4) positions filled to balance out party representation.

*Summe v. Kenton County Clerk's Office*, 604 F.3d 257, 265 (6th Cir. 2010).

In these cases, a plaintiff must first make out a prima facie case that he was not hired because of political affiliation and if the plaintiff can succeed in making that showing, the

defendant must then show that the position is of a type that would qualify for an exception to the rule against patronage dismissals. *Summe*, 604 F.3d at 265 (citing *Branti v. Finkel*, 445 U.S. 507, 515, 100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980)).

In this case, I will assume *arguendo* that Plaintiffs could establish a prima facie case that they were not hired because of affiliation with the previous recall efforts. *See Summe* (finding prima facie case shown where individual defendant required employees to submit applications for rehire, he never interviewed them, and replaced them with his campaign supporters or contributors without requiring them to file applications or after allowing them to file late applications). The question then becomes whether Defendants can show that the Township Board positions fall within any of the *McCloud* exceptions.

Defendants contend that, because the Township Board is a legislative decision-making body, the positions on the Township Board are policy-making positions that fall within the *McCloud* exceptions. (Doc. 25 at 34, citing Mich. Comp. Laws § 41.70, 41.2 *et seq*.) I suggest that Defendants are correct. A position on a legislative body such as the Township Board of Trustees, including the positions of Treasurer, Supervisor, or Clerk, are classic examples of category one or two positions that involve discretionary authority to carry out the law or other policy of political concern or positions in which such discretionary decisionmaking of the first category has been delegated. I therefore suggest that Defendants' motion for summary judgment be granted as to the First Amendment claim.[3]

---

[3]Even if Plaintiffs were public employees who made political statements, I suggest that they would not be entitled to First Amendment protection because of their potential to cause disruption in the Township Board. *See Moorer v. Copley Twp.,* 98 F. Supp. 2d 838, 844 (N.D. Ohio 2000) ("Plaintiff called his superior officer, the Police Chief, a liar in public. Even if there were any First Amendment interest in Plaintiff's speech, it was minimal, and did not outweigh the threat of disruption and disharmony."); *Paquette v. City of Mason*, 250 F. Supp. 2d 840, 846 (S.D. Ohio 2002) (anonymous e-mail written to city board expressing disapproval was not entitled to First Amendment protection).

As indicated above, I suggest that Plaintiffs have not established that any of their constitutional rights were violated. Even if they had, I suggest that those rights are not so clearly established that a reasonable person should have known that their conduct violated those rights. I therefore suggest that Defendants would be entitled to qualified immunity even if the above analysis is rejected.

### 4. Conclusion

For all the reasons stated above, I recommend that Defendants' motion be granted and the case be dismissed in its entirety.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve

all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

 s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

CHARLES E. BINDER
United States Magistrate Judge

Dated: October 14, 2010

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: October 14, 2010                         By     s/Patricia T. Morris
                                               Law Clerk to Magistrate Judge Binder