UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID SANCHEZ, DONALD JACKSON,
JUDY FATH-JACKSON, TRUDY WILDE,
BARBARA SANCHEZ, GEORGE BROWN,
and ROSEMARY BROWN,

          Plaintiffs,

v.                                          Case Number: 09-12076-BC
                                           Honorable Thomas L. Ludington

TOWNSHIP OF KOCHVILLE, ALAN BADER,
MARTIN YANCER, EDWARD TAYLOR,
JERRY DAVIS, RANDY NORTON, CRYSTAL
KAUER, and PATRICIA BOURDOW,

          Defendants.
_____/

**OPINION AND ORDER OVERRULING PLAINTIFFS' OBJECTIONS, ADOPTING JUDGE BINDER'S REPORT AND RECOMMENDATION, GRANTING DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT, AND DISMISSING PLAINTIFFS' COMPLAINT WITH PREJUDICE**

     United States Magistrate Judge Charles E. Binder issued a report and recommendation ("R&R") [Dkt. # 33] on October 14, 2010, recommending that the Court grant Defendants' motion to dismiss and for summary judgment [Dkt. # 25]. Judge Binder determined that all of the Plaintiffs' claims lack factual or legal support.

     Any party may serve and file written objections to an R&R "[w]ithin fourteen days after being served with a copy" of the report. 28 U.S.C. § 636(b)(1). Plaintiffs filed objections on October 25, 2010 [Dkt. # 34] and Defendants filed a response on November 4, 2010 [Dkt. # 35]. The district court will make a "de novo determination of those portions of the report . . . to which objection is made." *Id.* The Court is not obligated to further review the portions of the report to which no objection was made. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985). "Generally, the failure to file specific objections to a magistrate's report constitutes a waiver of those objections." *Cowherd*

*v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (citation omitted).  For the reasons explained below, Plaintiff's objections will be overruled, Judge Binder's R&R will be adopted, Defendants' motion to dismiss and for summary judgment will be granted, and Plaintiffs' complaint will be dismissed with prejudice.

## I

Judge Binder summarized the procedural and factual history of the case in his R&R:

> Plaintiffs are residents of Kochville Township in Saginaw County, Michigan, who allege that their First and Fourteenth Amendment rights were violated by Defendants when Defendants disqualified Plaintiffs from serving on the Kochville Township Board of Trustees based on their previous support of a recall effort in that township. (Doc. 1 ¶¶ 25-44.)  Defendants filed the instant motion to dismiss or for summary judgment on June 30, 2010.  (Doc. 25.)  On July 7, 2010, United States District Judge Thomas L. Ludington referred the motion to the undersigned magistrate judge.  (Doc. 26.)  Plaintiff responded (Doc. 28) and Defendants replied. (Doc. 29.)  Oral argument was held on August 18, 2010.  After considering the arguments of the parties and upon review of the documents, I conclude that, pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation.
>
> Plaintiffs' complaint specifically alleges that in the fall of 2005, Plaintiffs formed a concerned citizens group called "Kochville First" in order to call attention to and prevent a proposed rezoning of Kochville Township (hereafter "the Township") that would allow for commercial development. (Doc. 1 ¶¶ 20-22.)  The rezoning was prevented, and in April 2006, a petition was circulated to recall the Township Trustees based on the zoning issue, alleged violations of the Open Meetings Act and for appointing relatives to township positions. (Doc. 1 ¶¶ 23-24.)  The recall petition was successful and, after four trustees were removed, only Patricia Bourdow remained. (Doc. 1 ¶ 25.)
>
> Since one trustee did not a quorum make, the Saginaw County Election Commission ("Election Commission") began an initial search for two persons to temporarily serve on the Township Selection Committee that would in turn select two persons to serve on the Township Board of Trustees.  (Doc. 1 ¶ 26.) Applications were due no later than August 21, 2006. (Doc. ¶ 27.)  At the August 14, 2006, meeting of the Election Commission, it was noted that the Commission was "seeking applicants who were not involved in the recall petition." (Doc. 1 ¶ 27.)
>
> On August 16, 2006, the Election Commission "established the process for filling vacancies generated from the recall effort," i.e., the positions of Township Clerk and Treasurer.  (Doc. 1 ¶ 28.)  The Election Commission indicated that the "applicants must be registered voters" and that the Commission, along with the sole remaining Trustee, would select the two members of the Township's Board of

Trustees who would serve temporarily until the next general election in November 2006. (Doc. 1 ¶¶ 28-29.) The application asked only whether the candidate was a registered voter in the Township, whether the candidate had ever been convicted of a felony, whether the candidate understood the position was temporary and why the candidate was interested in the position. (Doc. 25, Ex. 1.)

At the August 21, 2006, Election Committee meeting, Defendant Bader listed the Plaintiffs along with others who had been involved in the recall effort and "announced that these people should not be considered for any temporary Board position." (Doc. 1 ¶ 30.) At other Election Committee meetings occurring on August 16, and August 23, 2006, "residents questioned why and/or how the Commission or the Township could disqualify applicants because they were participants in either the recall or referendum efforts." (Doc. 1 ¶ 31.) Despite these discussions, the only qualifications for the openings listed on the Election Commission's posting were that the candidates must be residents of the Township and registered to vote in the Township. (Doc. 1 ¶ 32.)

The Election Committee chose Defendants Taylor and Yancer to join Defendant Bourdow on the Selection Committee. (Doc. 1 ¶ 33.) The Election Committee then created an application form regarding the two open positions on the Township Board of Trustees and question 15 of that form asked "about the applicant's involvement in the recall and/or referendum efforts." (Doc. 1 ¶ 34; Ex. A.) When Plaintiffs "made public comments that they believed it was or would be unconstitutional to judge applicants according to their answers to question #15 [,] [t]he Plaintiffs were assured that item/question #15 would be 'used for reference only.'" (Doc. 1 ¶ 35.) "Some of the applicants who answered 'yes' to question #15 were selected for an interview" but were "grilled" about involvement with the recall or referendum efforts and were "then disqualified." (Doc. 1 ¶ 36.)

On September 5, 2006, Plaintiff Fath-Jackson was interviewed by the Selection Committee for the Treasurer position but was turned down and was told by Defendant Yancer that "because she had signed the recall petition, they had to chose the other applicant, Defendant Norton." (Doc. 1 ¶ 38.) On September 26, 2006, Plaintiffs Sanchez and Fath-Jackson were interviewed for the Supervisor and Trustee positions that had been posted. They were asked about question 15, and although they were qualified for the positions, they were denied employment. (Doc. 1 ¶ 41.) On October 2, 2006, Plaintiff Jackson applied to be a member of the Township's Planning Commission but was not appointed to that position until December 20, 2008, "after election of a new Township Trustee Board." (Doc. 1 ¶ 42.) At the November 21, 2006, Township Board meeting, when referring to the process of choosing an additional Trustee, Township Treasurer Defendant Kauer stated that "'we should stay away from the people that brought around petitions which were about fifteen (15) people." (Doc. 1 ¶ 43, Doc. 1 Ex. C at 7.)

Apparently Plaintiffs George Brown, Rosemary Brown, and Trudy Wilde applied for the remaining Trustee position "at one time or another," but were not chosen. (Doc. 1 ¶ 44.)

Plaintiffs allege that they were "denied employment and/or appointment" and

> were "verbally abused and publicly humiliated by the Defendant's Trustees during monthly meetings since the recall and/or referendum efforts." (Doc. 1 ¶ 45.) Plaintiffs aver that the above actions violated their Fourteenth Amendment rights to due process because they have a liberty interest "not to be stigmatized by false and untrue statements [or] guilt by association . . . that would thereby seriously hinder the Plaintiff's ability to obtain and/or keep employment with the Township," and because they have a property interest in obtaining employment with the Township. (Doc. 1, Count I, ¶¶ 47-48.) Plaintiffs further aver that the above actions constituted violation of their First Amendment rights because Defendants retaliated against them for exercising their rights of free speech. (Doc. 1, Count II.) Plaintiffs seek compensatory and punitive damages. (Doc. 1 at 13.)

R&R at 1–5 (footnotes and headings omitted). Notably, if Defendants' conduct violated Michigan election law or the State Constitution, Plaintiffs have not raised those concerns here and may be unable to do so in this Court of limited jurisdiction.

Judge Binder determined that Plaintiffs' claims against the Township should be dismissed because the Plaintiffs could not demonstrate that a Township policy was the "moving force" behind the alleged unconstitutional employment condition. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978). He next decided that the claims against Defendants Davis and Norton should be dismissed because Plaintiffs' did not allege that either person actually participated in the challenged activity. Finally, Judge Binder determined that the claims against the remaining Defendants should be dismissed because Plaintiffs could not show that a constitutional violation had occurred.[1] Specifically, Plaintiffs could not demonstrate that they possessed a protected property or liberty interest under the Fourteenth Amendment or that the Defendants' alleged wrongdoing was "conscience shocking." Further, Defendants demonstrated that the positions for which Plaintiffs

---

[1] Judge Binder's final conclusion—that no constitutional violation had occurred—would be sufficient to dismiss the claims against all the parties. Because the Court has determined that conclusion was correct, it is unnecessary to review Judge Binder's alternate conclusions as to the Township, Davis, and Norton. Accordingly, to the extent Plaintiff's objections focus on Judge Binder's alternate conclusions, it is unnecessary to address those objections.

applied involved discretionary policy making authority, meaning that political affiliation could be an appropriate consideration of the hiring committee.

## II

As Plaintiffs emphasize, public employment decisions generally may not be based on the political beliefs of the employees. *See Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257, 264 (6th Cir. 2010) (citing *Elrod v. Burns*, 427 U.S. 347 (1976)). However, for certain types of "policymaking" or "confidential" positions, political ideology may be an appropriate consideration. *Id.* at 264–65; *see also Branti v. Finkel*, 445 U.S. 507, 517 (1980). The key question is "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Lane v. City of LaFollette*, 490 F.3d 410, 419 (6th Cir. 2007) (quoting *Branti*, 445 U.S. at 518). If political beliefs may be considered when selecting candidates for a particular position, that position is said to qualify for a "patronage exception." *Summe*, 604 F.3d at 264–65.

> In *McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir.1996), the Sixth Circuit outlined four categories of government positions that will always qualify for patronage exceptions: (1) those that are specifically named in a relevant statute or that are charged with the discretionary authority to carry out the law or other policy of political concern; (2) a position to which discretionary decisionmaking of the first category has been delegated; (3) confidential advisors who spend a significant amount of their time advising category-one employees on how to exercise their statutory policymaking authority, or other employees who control the lines of communications to category-one employees; and (4) positions filled to balance out party representation.

*Id.* at 265.

Plaintiffs first object to Judge Binder's conclusion that the positions for which Plaintiffs applied fall within the patronage exception, contending that whether or not the positions fall within the exception is an issue of fact that should be submitted to a jury. Defendants respond that

township board members are elected officials with ultimate authority for establishing township policy. As a result, Defendants contend, political affiliations and beliefs are an appropriate consideration for county authorities charged with appointing temporary members of the township board.

Under Michigan law, members of a township board fit squarely into the first *McCloud* category, and therefore "*always* qualify for patronage exceptions." *Id.* (emphasis added); *see, e.g.*, Mich. Comp. Laws §§ 125.3102(n) (defining "legislative body" to include township boards); 125.3202 (providing township board with discretionary policy making authority over zoning). Accordingly, no reasonable jury could conclude that township board members do not qualify for the patronage exception and Judge Binder did not err in recommending dismissal of Plaintiffs' First Amendment retaliation claims on that basis. As a matter of law, political beliefs are an appropriate consideration for a selection committee to consider when appointing temporary members of a township board. *See Branti*, 445 U.S. at 518.

Plaintiffs next object to Judge Binder's conclusion that Plaintiff's cannot establish a protected property or liberty interest in their prospective employment on the township board as required to support a substantive due process claim.[2] Plaintiff's argue that "[i]f cessation of employment can state a Fourteenth Amendment due process claim, refusal of employment should

---

[2] As Defendants emphasize, Plaintiffs did not object to Judge Binder's conclusion that the alleged wrongdoing was not "conscience shocking" and Plaintiffs' substantive due process claims could be dismissed on that basis alone. *See Cowherd*, 380 F.3d at 912 (requiring "specific" objections). Moreover, substantive due process claims are not available where Plaintiff has a remedy in an "explicit textual source of constitutional protection," such as the First Amendment provides in this case. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Nevertheless, Judge Binder's conclusion with respect to Plaintiffs' due process claims relied in part on the lack of a protected property or liberty interest and the Court will address Plaintiffs' objection with respect to that claim.

also state a Fourteenth Amendment due process claim." Plaintiffs do not, however, advance any legal support for their argument.[3] A plaintiff does not have a protected property interest in her continued employment when she is just one of many candidates for a position. Even if the prospective employee was treated unfairly, she was not deprived of any "legitimate claim of entitlement" in the process. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

### III

As a matter of law, Plaintiffs cannot demonstrate that the selection committee's consideration of their political beliefs in determining whether or not to appoint them to temporary positions on the township board violated the First or Fourteenth Amendments.

Accordingly, it is **ORDERED** that Plaintiffs' objections [Dkt. # 34] to Judge Binder's report and recommendation are **OVERRULED**.

It is further **ORDERED** that Judge Binder's report and recommendation [Dkt. # 33] is **ADOPTED**.

It is further **ORDERED** that Defendants' motion to dismiss and for summary judgment [Dkt. # 25] is **GRANTED**.

It is further **ORDERED** that Plaintiffs' complaint [Dkt. # 1] is **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 25, 2011

---

[3] The argument is presented as a direct quote from *Elrod*, 427 U.S. at 357. The quoted language does not, however, appear anywhere in the Supreme Court's opinion in that case.

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 25, 2011.

                                          s/Tracy A. Jacobs
                                          TRACY A. JACOBS